GEORGE C. BALLOU *v.* EDWARD HARRIS & others.

Under the "act in relation to the Blackstone Canal," passed at the January session of the general assembly, 1849, which provides for the discontinuance of said canal as a navigable highway, and for an assessment of damages in favor of land-owners against mill-owners who may desire to keep sections of it open for the uses of their mills, no one is entitled to claim damages for the keeping open upon his land of a section of the canal, who is restricted from closing it up by a reservation in the deed under which he claims title.

A reservation in the deed of a claimant construed, and the word "trench" held to include a section of the canal, used as such at the time of the execution of the deed, as necessary to effect the avowed purpose of the reservation, and to carry out the intent of the parties; notwithstanding there was another, but insufficient outlet of water from the pond to the mills supplied by it, called "a trench."

Where, from the ruling of the court, upon a motion for a new trial, it is clear that the claimant can in no event be entitled to damages for the cause for which he claims them, the court will order judgment, notwithstanding the verdict, to be entered up for the respondents.

THIS was an appeal from the award of commissioners, appointed to estimate damages, under the eleventh section of the "act in relation to the Blackstone Canal," passed at the January session of the general assembly, 1849; which act provided for the discontinuance of the canal as a navigable highway, and permitted portions of it to be kept open by mill-owners and others, for their benefit, they paying to the owners of the land proper damages for so doing.

At the trial of the appeal in this court, at the September term, in Providence, 1858, before the chief justice, sitting with a jury, it appeared that the claimant, who was the owner of a cotton mill on the "upper dam" at Woonsocket Falls, claimed that damages should be assessed to him, under said act, against the respondents, also mill-owners at the same dam, for keeping open a section of the canal, originally constructed on land now in his ownership, which mainly supplied with water, from the pond raised by said dam, the mills both of the claimant and respondents. The claim was resisted upon several grounds; but principally upon the ground, that by the deed under which the claimant derived his title from James Arnold, the common grantor of all the parties, he was positively restricted from closing up this section of the canal, and so was not entitled to

claim damages for its being kept open. This, with the other questions raised, was, for the sake of having the amount of damages assessed, ruled *pro forma* in favor of the claimant; and the jury having returned a verdict assessing damages for the claimant in the sum of $2,287.50, the respondents now moved for a new trial, on the ground of misdirection to the jury in matters of law.

The ground of the motion, so far as noticed by the court, is so fully set forth in the following opinion, together with the clause of the deed, and facts necessary to its construction, that it is unnecessary to repeat them here.

*C. Robinson,* for the motion:—

The construction of the reservation in the claimant's grant, assisted, as it was, by the circumstances of the parties and of the thing granted, should have been put to the jury; *Adams* v. *Frothingham,* 3 Mass. 352; the phrase, " to keep open the trench as it now is," involving a latent ambiguity, to be explained by proof. *Salisbury* v. *Andrews,* 19 Pick. 250; *Sargent* v. *Adams,* 3 Gray, 72; *Gerrish* v. *Towne,* Ib. 82; *Woods* v. *Sawin,* 4 Ib. 322. Where the intent of the parties can be discovered from the deed, it should be carried into effect. *Bridge* v. *Wellington,* 1 Mass. 219; *Pray* v. *Pierce,* 7 Ib. 381; *Frost* v. *Spaulding,* 19 Pick. 445; *Bryan* v. *Bradley,* 16 Conn. 474; *Means* v. *Presbyterian Church,* 3 S. & R. 303; *Thomas* v. *Hatch,* 3 Sumn. 170; *Moore* v. *Griffin,* 9 Shepl. 350; *Cocheco Company* v. *Whittier,* 10 N. H. 305; *Master Pilots, &c. of Newcastle upon Tyne* v. *Bradley & others,* 10 Eng. L. & Eq. R. 386. The intent of the parties in the reservations of the grant is to be inferred from the nature of the reservations and the circumstances of the case (*Mendall & others* v. *Delano,* 7 Met. 176); and in the claimant's deed, the intent is clear, and the court will give full effect to it. *Tillinghast* v. *Fry,* 1 R. I. Rep. 37. In fact, it was incumbent on the claimant to prove that the particular claim he makes was not within the reservation of the grant to him. *Fish* v. *Bodfish,* 27 Maine, (14 Shepl.) 289. The reservation " to keep open the trench as it now is," includes all its connections, incidents, and appurtenances. *French* v. *Cahart,* 1 Comst. 90; *Adams* v. *Warner,* 23 Verm. (7 Washb.) 395;

Ballou v. Harris & others.

*Cromwell* v. *Selden*, 3 Comst. 253; *Olmstead* v. *Loomis*, 6 Barb. Sup. Ct. R. 152; *Forbush* v. *Lombard*, 13 Met. 109; *Wyman* v. *Farrar*, 35 Maine, (5 Redf.) 64.

*S. Ballou* and *T. A. Jenckes*, against the motion:—

The Blackstone Canal Company, by virtue of their charter and location, had only an easement over the land of the claimant; and by the "act in relation to the Blackstone Canal," passed by the general assembly at their January session, 1849, the land in question, occupied by the canal company, reverted to the claimant discharged of the easement of the company, and the claimant had a right to fill up that section of said canal, unless the mill-owners should elect to keep it open and pay damages to the claimant, as provided in the act.

The exceptions, restrictions, and reservations in the claimant's deed do not take away or impair this right of the claimant, because: 1st, in said deed it is expressly declared, that the Blackstone Canal Company have only an easement in the use of the water; and 2d, the easements to which the granted estate is there declared subject, are those, and those only, which had been created by the act or deed of the grantor; and the easement of the Blackstone Canal Company was not so created.

BRAYTON, J. By an act of the general assembly, passed at the January session thereof, 1849, entitled "an act in relation to the Blackstone Canal," the Blackstone Canal Company were authorized to discontinue the canal constructed by them as a navigable highway; and the act provided, that said company should be discharged from all obligation to maintain the same, or any of the dams, ponds, embankments, or other structures by them erected or created for the purposes of said canal, except where they had, by contract, bound themselves so to do. The act also provided, that all the lands upon, through, or over which the canal, or any of the appurtenances thereof, were located or constructed, under their charter, should revert to the persons who were owners thereof at the time of the location, their heirs and assigns, discharged of all easements thereon, or thereupon, excepting however, in so far as a continuance thereof should be necessary for the protection of the legal or equitable

rights and interests of the owners, or of persons having title to, or interest in, the mills, improvements, or investments made along the route of said canal in consequence of the dams and ponds located or constructed or raised by said company, and by means whereof such owners or persons interested had acquired a legal or equitable right to the continuance of any such dam or pond forever; and in such case it was provided, that damages for the future maintenance of such dam, pond, &c., should be assessed to the owners of the land, by commissioners to be appointed for that purpose.

It is under this act, that the present claimant filed his claim for damages against the defendants, and alleged, that he was the owner in fee of certain land upon which a portion of said canal was located; that, by the continuance of this portion of the canal, great damage was done to him, and that the defendants are the persons interested in, and benefited by, its continuance; and, thereupon, he claims an assessment of damages against them, according to the provisions of said act.

At the time of the location of this canal by the Blackstone Canal Company, and for a long time afterwards, one James Arnold was the owner of the land.

At the trial, the claimant, for the purpose of proving his right, as reversioner to this land over which the canal was located, to damages for its continuance, put in evidence a deed executed by the said James Arnold to him, dated August 29, 1839. This deed conveyed to the claimant the land, describing it by metes and bounds, together with a certain water privilege appurtenant thereto, thus described in the deed: " and the water privilege aforementioned is the right to take and use, on the premises, one sixteenth part of the water of the Blackstone River at said Woonsocket Falls dam, and from said dam and the fall thereof, from the top of the water on said dam, to the extent formerly conveyed to Thomas Arnold and others." The deed contains, also, this reservation: " Also, said James Arnold reserves to himself, his heirs and assigns, the right to keep open the trench, as it now is, whereby the water is carried from said dam to his, the said James's, grist-mill lot and elsewhere, and the right to draw water, through said last-mentioned trench, to lands of the

grantor to any extent, not impairing said George's use of the aforesaid sixteenth of said water."

In their defence, the defendants claimed, that under the deed and the reservation therein made by James Arnold, the claimant was precluded from closing up the canal in question, and was bound to keep it open, as it was at the time of the execution of the said deed.

The court ruled, *pro forma*, that the construction of the claimant's grant, taking into consideration the actual state of things existing at the time of the grant, as proved, did not reserve to James Arnold, his heirs and assigns, nor except out of the grant, the right of the claimant to the reversion of that section of the canal, and to close up the same; and so instructed the jury; and the question is, whether this construction is correct.

From the statement of the case it appears, that prior to the charter of the canal company, there had been a trench, leading from the pond formed by the Woonsocket Falls dam, of the width of some ten feet, extending from the grist-mill lot of Arnold up to the pond, and entering it near the east end of the dam; that the canal company constructed their canal by excavating the earth on the north side of this trench, making the space of sufficient width for the purposes of navigation; that this mode of construction was continued from the grist-mill lot upward, toward the pond, the greater part of the distance to the pond, and then, curving off from the old trench at that end, cut off the point of land now called the island, leaving that between the old trench and the new canal; the trench being of much less width than the canal. It appears, also, that at the time of the execution of this deed, three fourths of all the water which passed to the mills below, for their use, passed through this canal on the west side of the island thus formed, and could not be freely and beneficially carried to the mill otherwise.

The same necessity still exists; and, as the proof shows, in order to derive the full benefit of the water power created by the dam, it would be necessary to remove the island, and open the whole space to the pond.

Taking along with us these facts, and looking at the terms

of the reservation in this deed, we cannot hesitate in the conclusion to which we ought to come as to the right of the parties under it,—that it was the intent of the parties to this deed, that at no time forever thereafter should the capacity of the avenue through which the water then flowed from the pond—the water power of which he had conveyed in great part, but which he also retained in part—be rendered less by being straitened or contracted, but should remain open, of the width it then was; and that this avenue, called by the parties the trench, which conveyed the water from the dam to the grist-mill lot, included not merely the outlet of the pond west of the island, as it is called, but the outlet of it also by the canal, dug by the canal company under the charter, to the east of the island. We must presume that it was some practical benefit which the grantor desired to reserve, and which the grantee consented should be reserved. An ample supply of water for his mills could be his only object in keeping open any trench, or canal, of any width. It must have been quite immaterial to the parties whether the trench were wide or narrow, so long as the supply of water was preserved as it then was. The mode of securing the continuance of this supply, was, by providing that the passage-way for it should not be contracted. We must regard the language here used as providing the mode to secure the supply.

We see nothing in the language used, as explanatory of the word "trench," which militates against this construction. The argument for the claimant is, that as the trench is described as one which carries the water from "the dam," and as the opening at the south end of the island is that which takes the water from that part of the pond, and from that point nearest the dam, the parties could not have intended to include the canal, which opens into another part of the pond. It is conceded, however, that all the open space below the island is included in the term "trench." The sense in which the parties use the word "dam," is evidently not its primary sense. In using this word, it was in reference to the water power—reservoir of water—the pond raised by the dam—effect for cause. In this sense, it is clearly used in that part of the deed describing the

water power granted—" one sixteenth of the water of the Blackstone River," from the top of the *water* in said dam. Here it is used in the sense of " pond;" and we may fairly presume that it is used in the same sense in this reservation, seeing, as we do, that its use in this sense is necessary to effect the purpose of the parties.

As little reason is there to be found in the use of the word " canal," to exclude it from the terms here employed. Had the canal, so called, not been used at any time for a highway, it would fall most naturally within the term " trench." It would not occur to anybody to make the distinction here suggested. It probably did not to the parties to this deed.

Looking at the map of these premises, it is seen, that the trench extended from the mill-lot below to the pond, and opened into it by two channels, one on either side of the island; and that the island may very properly be described as lying in the mouth of the trench, and forming an obstruction in it.

If this be the proper construction of the deed under which the claimant holds, and of this we think there can be no doubt, the defendants were entitled to the benefit of it upon the trial; and as by the *pro forma* ruling of the court and their instruction to the jury, they were deprived of that benefit, they are entitled to a new trial; and a new trial must be ordered, if it can be of any service to either party that a further trial should be had.

The right of the claimant to recover damages rests upon his right to close up this canal, so far as it is located upon his land. By the construction which we give to this deed, he has no such right; but by its provisions, he is under obligation to have it continued and kept open forever, for the use of the mills to which the water is taken from it; and this he is bound to do, independent of any reversionary right provided for in the act referred to. That act does not authorize a discontinuance of the canal, or of any dam, or other structure, upon the land which may so revert, if the owner be under any obligation to maintain the same, or to permit others to maintain the same, by virtue of any deed, covenant, or contract, between the owner

36 *

of such land and other persons, for other than canal purposes. It does *not* affect any private covenant or contract for the maintenance of any of the structures made by the canal company. It was competent for the owner of the land and the mill-owners to contract for the continuance of the canal in the contingency that the corporation should abandon it, or without noticing that contingency. The act was not intended to interfere with any such contract, or with the rights of the parties under any such agreement.

The claimant here is the owner of land under such an obligation. If he keeps open this canal, he does it in the discharge of a duty imposed upon him, aside from any imposed by the act,—one, for the performance of which this act does not authorize him to claim damages. It is only where he is obliged by the provisions of the act to keep the canal open, that the act couples the obligation with the right to damages. The claimant does not stand in that position; and is not, therefore, in a condition to claim that damages be assessed to him. The obligation he has voluntarily assumed, he is bound to perform, at his own cost. If he would be remunerated, it is his fault that he did not provide for it when he assumed the obligation.

It is evident that a new trial could be of no service to the claimant in this case; the defence set up being as much a bar to all damages as to a portion of them.

Judgment must therefore be, notwithstanding the verdict, for the defendants, for their costs.